```
                    United States District Court
                      District of Massachusetts
_____
                                )
J.B., by her mother and next    )
friend, DEBORAH BARBOZA         )
        Plaintiff,              )
                                )     Civil Action No.
        v.                      )     08-11698-NMG
                                )
MICHAEL J. ASTRUE, as           )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
        Defendant.              )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Deborah Barboza ("Barboza") brings this action on behalf of her minor child, J.B., seeking judicial review of the decision of the Social Security Commissioner ("the Commissioner") to terminate J.B.'s disability benefits.  Before the Court are 1) the plaintiff's motion to reverse or remand the decision of the Commissioner and 2) the defendant's motion to affirm the same. The Court considers the motions concurrently.

I.  **Factual Background**

The factual record is summarized as follows:

J.B., a minor and resident of Braintree, Massachusetts, has suffered from severe asthma since her early childhood.  She experiences periodic asthma flare-ups, which are characterized by persistent wheezing and shortness of breath, and takes a regimen of medications to control her symptoms.  J.B. has received

-1-

treatment for her asthma at Upham's Corner Health Center ("Upham") with Dr. Elizabeth Moths-Rebrovic ("Dr. Moths-Rebrovic") serving as her primary treating physician.

J.B.'s asthma has had a considerable impact on her physical abilities, social life and academic performance.  Asthma attacks interrupt J.B.'s sleep cycle, as she often awakens in the middle of the night due to breathing difficulties.  J.B.'s asthma has also contributed to her obesity.  Unable to exercise without wheezing or shortness of breath, J.B. has gained weight at an alarming rate.  In September, 2005, at age 13, J.B. was five feet four inches tall and weighed 239 pounds.

J.B.'s asthma has also affected her ability to socialize with her peers.  Various environmental factors (such as dogs, cats, perfume and pollen) trigger J.B.'s asthma attacks, making it difficult for her to visit her friends' homes for fear of a flare-up.  Aware of this risk, J.B. spends most of her free time alone in her room listening to music or reading.  The lack of socialization has had a noticeable impact on J.B.'s personality and she has become withdrawn and soft-spoken.

Finally, J.B. has experienced significant academic difficulties which have been compounded by her asthma. Standardized testing from October, 2004, places J.B.'s academic accomplishment in various subjects between the 17th to the 59th percentiles.  Her report card for 2004-2005 shows grades ranging

from "A" to "D-". Periodic asthma flare-ups have kept J.B. from attending school on a regular basis such that, during the 2004-2005 school year, J.B. was absent 30 days and tardy on nine occasions.

J.B. has been provided extra help to facilitate her academic progress. Her Individualized Education Program ("IEP") states that her attendance problems (caused by her asthma) have been a "major factor" impeding her academic progress. Even when J.B. is present in the classroom, her performance is hindered by her frequent absences, as she often misses the sequence and follow-up of her school lessons. Her sleep disturbances also leave her tired and unable to concentrate at school.

## II. Procedural History

Plaintiff first applied for Social Security Income ("SSI") disability benefits on her daughter's behalf in 1995, when J.B. was three years old. In March, 1995, the Commissioner determined that J.B. was disabled due to asthma and a learning disability and approved her application. In May, 2000, following a hearing for Continuing Disability Review, the Commissioner concluded that J.B. continued to meet the childhood disability criteria and should continue to receive benefits. Specifically, the hearing officer found that J.B. had a "marked" impairment in age appropriate cognition (due to a learning disorder and school absences caused by asthma) and an "extreme" limitation in age

appropriate motor functioning.

In 2004, when J.B. was 12 years old, the Commissioner initiated another disability review. On that occasion, however, the Commissioner denied benefits, finding it impossible to ascertain whether J.B. remained disabled because she failed to attend the consultative examinations. On reconsideration, the Commissioner found that J.B.'s medical condition had improved and her benefits should be discontinued as of July 1, 2005.

Plaintiff requested an administrative hearing which was conducted by an Administrative Law Judge ("ALJ") on July 26, 2007. The ALj issued an unfavorable decision on August 31, 2007, finding that J.B.'s impairments were not disabling as of July 1, 2005. The Appeals Council denied J.B.'s request for review on August 4, 2008, rendering the ALJ's decision the final decision of the Commissioner. The matter is now ripe for review in this Court pursuant to 42 U.S.C. § 405(g) (Section 205(g) of the Social Security Act ("the Act")).

### III. <u>Legal Analysis</u>

#### A. **Standard of Review**

The Act gives federal district courts power to enter upon the pleadings and transcript of the record a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Act also provides, however, that the

findings of the Commissioner are conclusive so long as 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard.  See id.; Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001).

Accordingly, as long as the Commissioner applied the correct standard and his decision is supported by substantial evidence, the Court must uphold it, even if the record could justify a different conclusion. Evangelista v. Sec'y of Health and Human Services, 826 F.2d 136, 144 (1st Cir. 1987).  In reviewing the record for substantial evidence, the Court is mindful that issues of credibility, resolution of conflicts in the evidence and determination of the ultimate question of disability are reserved for the Commissioner. Rodriguez v. Sec'y of Health and Human Services, 647 F.2d 218, 222 (1st Cir. 1981).  The Court must uphold the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Id.

**B.  Application**

To establish entitlement to social security benefits, a minor child must demonstrate that she has a

> medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and which ... has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

Once the Social Security Administration ("SSA") determines that a child has a disability, it must reevaluate her impairment from time to time to determine if she is still eligible for continuing benefits. 20 C.F.R. § 416.989. This evaluation, called a Continuing Disability Review ("CDR"), entails a three-step analysis. Id. at § 416.994a. First, the ALJ determines if the child has exhibited medical improvement in her impairment or impairments since the prior determination of disability. If the child's condition has improved, the ALJ next considers whether her impairment still meets or equals the severity of the listed impairment that it met or equaled at the time of the last evaluation. Finally, if there has been medical improvement and the child's impairment no longer meets or equals a listing, the ALJ determines whether, considering all of the child's current impairments, the child is still disabled. Id. at § 416.994a(b)(1)-(3).

A child's impairment functionally meets or equals a listing if she suffers "marked" limitations in two domains of functioning or "severe" limitations in one domain. 20 C.F.R. § 416.926a(a). The domains are 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for oneself and 6) health and physical well-being. Id. at § 416.926a(b)(1)(i)-(vi).

The ALJ in this case, following the standard regulatory procedure described above, concluded that as of July 21, 2005, 1) J.B.'s condition had medically improved, 2) J.B.'s impairments no longer met or equaled a listing and 3) J.B. was not disabled.  In accordance with the ALJ's decision, the SSA terminated J.B.'s benefits, effective July 1, 2005.

In her appeal, Plaintiff argues that the ALJ erred by 1) failing to give due weight to the testimony of J.B.'s treating physician, 2) misconstruing evidence of J.B.'s numerous school absences, 3) concluding that J.B.'s limitations are less than marked and 4) substituting his own judgment for matters entrusted to experts.  Each of those arguments is addressed <u>seriatim</u>.

### 1.   Weight Accorded to J.B.'s Treating Physician

Plaintiff argues that the ALJ improperly discarded the opinion of J.B.'s physician, Dr. Moths-Rebrovic, who has been the sole treating source for J.B.'s asthma for many years.  Plaintiff suggests, albeit indirectly, that had the ALJ assigned controlling weight to Dr. Moths-Rebrovic's medical opinion, he would have found that J.B. suffered a marked limitation in the domain of health and physical well-being.

Although SSA regulations generally mandate that the ALJ give more weight to medical opinions from "treating sources" who can provide a "detailed, longitudinal picture" of a child's medical history, such opinions are only given "controlling weight" if

they are 1) well-supported by medically acceptable techniques and 2) not inconsistent with other substantial evidence in the record.  20 C.F.R. § 416.927(d)(2).  The opinion of a non-examining source, standing alone, may constitute substantial evidence in support of the ALJ's decision despite the contrary opinion of a treating source.  Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (per curiam); see 20 C.F.R. § 416.927(d), (f).

Here, because there was substantial evidence demonstrating that J.B. was not disabled as of July 1, 2005, the ALJ was not obliged to assign controlling weight to the opinion of Dr. Moths-Rebrovic.  See Berrios Lopez, 951 F.2d at 431.  Instead, the ALJ properly relied on the opinions of two state-agency consulting examiners, Dr. Judith Capps ("Dr. Capps") and Dr. M. Douglass Poirier ("Dr. Poirier"), which the ALJ found consistent with the record as a whole.  Drs. Capps and Poirier both opined that J.B. suffered "less than marked" limitations in the domain of health and physical well-being.

Plaintiff argues that the ALJ's conclusion that "no treating physician ha[d] identified [a] greater limitation [than Drs. Capps and Poirier] as of July 1, 2005" is flawed because detailed records from Upham (the clinic at which J.B. has been regularly treated) fully document the marked limitations caused by J.B.'s chronic asthma.  No treating source, however, has explicitly

identified "extreme" or "marked" limitations, nor does the record indicate that J.B. has experienced the requisite number of asthma exacerbations in the period preceding the July 1, 2005, cessation date.  See 20 C.F.R. § 416.926a(e)(2)(iv) (requiring that claimant demonstrate that she has "frequent exacerbations" that "result in significant, documented symptoms or signs," and defining "frequent" as occurring three times per year for at least two weeks).  To the contrary, the notes plaintiff cites from Dr. Moths-Rebrovic either post-date the cessation date or were not presented to the ALJ, rendering them beyond the proper scope of the Court's review of the ALJ's decision.  See Johnson v. Apfel, 191 F.3d 770, 774-76 (7th Cir. 1999) (upholding SSA policy limiting scope of review to evaluation of evidence of improvement prior to cessation date); Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001) (restricting scope of review of ALJ's decision to evidence presented to the ALJ).

J.B.'s "Asthma Clinic Initial Assessment" from Upham, dated February 5, 2004, suggests that J.B.'s impairment is "moderate to severe" and "persistent."  That assessment, however, was part of a initial information-gathering visit, and was, in all likelihood, premised on J.B.'s own self-report without independent analysis or diagnosis.  C.f. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that ALJ may reject treating source's opinion if it is based exclusively on

claimant's subjective complaints that have been properly discounted). On a similar note, given that the report was made as part of an initial assessment (and before J.B. had developed a relationship with any physicians at Upham), it is debatable whether it is even entitled to "treating-source" status. See 20 C.F.R. §§ 416.927(d)(2) (i)-(ii).

Moreover, the "Asthma Clinic Initial Assessment" and other medical records from Upham documenting J.B.'s flare-ups do not necessarily cast doubt on the ALJ's findings. The ALJ determined that, as of July, 2005, J.B.'s asthma, although severe, was no longer disabling. Upham's records, which indicate that, as of September, 2004, J.B.'s asthma was "well-controlled," reinforce, rather than contradict, the ALJ's conclusions.

Finally, even if the ALJ erred in determining that J.B. did not suffer marked limitations in the domain of health and physical well-being, his error was harmless unless plaintiff can show that J.B. suffered marked limitations in another domain as well. See 20 C.F.R. § 416.926a(d) (requiring that claimant demonstrate "marked" limitations in two domains or an "extreme" limitation in a single domain). Because, as discussed below, plaintiff cannot demonstrate marked limitations in another domain, the ALJ's alleged error in the health and physical well-being assessment was harmless. See Perrez Torres v. Sec'y of Health and Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)

(applying harmless error standard in review of SSA's denial of disability benefits).

### 2. Significance of J.B.'s School Absences

Plaintiff's second argument fares no better than her first. She contends that the ALJ overlooked the causal link between J.B.'s asthma flare-ups, her frequent school absences and her poor academic performance. Specifically, plaintiff argues that the ALJ incorrectly concluded that J.B.'s academic problems were simply a product of her frequent absenteeism, rather than a consequence of her severe asthma. The ALJ, however, in his opinion, expressly stated that J.B.'s "lack of academic progress resulted [in part] from absenteeism related to [her] asthma." Thus, plaintiff's contention that the ALJ ignored the underlying cause of J.B.'s attendance problem is inaccurate.

### 3. ALJ's Assessment of J.B.'s Limitations in the Domain of Acquiring and Using Information

Consistently, plaintiff argues that the ALJ incorrectly analyzed J.B.'s functioning in the domain of acquiring and using information. She contends that, had the ALJ properly considered the effects of J.B.'s numerous absences on her ability to learn, he would have concluded that she suffers a marked limitation in acquiring and using information.

Although the recent policy interpretation rulings of the SSA note that chronic absence from school can result in limitations in the domain of using and acquiring information, see SSR 09-08,

74 Fed. Reg. 7524-01 (Feb. 19, 2009), the fact that J.B. was frequently absent does not, by itself, demonstrate a marked limitation.[1]  With respect to the domain of acquiring and using information, a marked limitation involves an impairment that "interferes seriously with [the] ability to independently initiate, sustain or complete activities" or when the claimant's standardized test scores fall between two and three standard deviations below the mean.  See 20 C.F.R. § 416.926a(e)(2)(i), (iii).

Although the record demonstrates that J.B. struggles academically, it does not support a finding that she suffers a marked limitation in the domain of using and acquiring information.  Dr. Jeffrey Jampel, a consulting psychologist, concluded that J.B.'s IQ was approximately 90 (with a verbal IQ of 97 and a performance IQ of 84).  Her standardized test scores fall between the 17th and 59th percentiles.  She receives extra help as part of an IEP but follows the standard curriculum for her grade level.  Although several of J.B.'s teachers and school administrators noted significant problem areas in various academic domains, no one examiner opined that J.B.'s impairments "interfere[d] seriously with [her] ability to independently initiate, sustain or complete activities."  Finally, Drs. Capps

---

[1] Although the policy interpretation was not published until after the ALJ issued his decision, it sheds light on the underlying regulations which remain unchanged.

and Poirier both noted J.B.'s frequent absences in their reports but concluded nonetheless that she did not suffer disabling limitations. Those opinions suffice to uphold the ALJ's determinations. See Berrios Lopez, 951 F.2d at 431; 20 C.F.R. § 416.927(f).

### 4. ALJ's Judgment with respect to J.B.'s Alleged Learning Disability

Finally, the plaintiff contends that the ALJ erred in concluding that J.B. did not suffer from a learning disability and substituted his own lay judgment for that of qualified experts.

Plaintiff's argument is unavailing. The evidence provided by J.B.'s teachers and examiners supports the ALJ's finding that, although J.B. struggled in school, a learning disorder was not the primary cause of her lack of progress. Moreover, what is crucial to the ALJ's disability determination is not whether J.B. in fact has a learning disability but whether, at the time of the CDR, her impairments caused her to suffer marked or extreme limitations in any of the six domains of functioning. Even assuming that J.B. suffers from a learning disorder, that fact does not in itself serve as evidence of a marked or extreme limitation.

An ALJ is permitted to "render[] common-sense judgments about functional capacity based on medical findings." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990)

(per curiam). Indeed, if he were required to adopt the opinion of all qualified experts perfunctorily, he could not possibly fulfill his duty to consider and weigh all of the evidence in the record. See 20 C.F.R. § 416.927(e)(2)(reserving the ultimate determination of functional equivalence for the Commissioner); accord Evangelista, 826 F.2d at 144. Here, because substantial evidence supported the ALJ's determination that J.B. did not suffer marked limitations in two or more domains, the Commissioner's decision will be affirmed and the plaintiff's appeal will be dismissed.

## ORDER

In accordance with the foregoing, Plaintiff's motion to reverse or remand the decision of the Commissioner (Docket No. 13) is **DENIED**, Defendant's motion for order affirming the decision of the Commissioner (Docket No. 15) is **ALLOWED** and this appeal is dismissed.

**So ordered.**

                                               /s/ Nathaniel M. Gorton  
                                              Nathaniel M. Gorton  
                                              United States District Judge

Dated September 17, 2010